308 A.2d 820.

ALBION RAYMOND *vs.* B. I. F. INDUSTRIES, INC.

AUGUST 14, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This is a petition which the petitioner-employee has entitled "Petition to Adjudge in Contempt." It has been considered throughout these proceedings, however, as though it were a petition to enforce the provisions of a supplementary agreement providing for compensation payments for total disability.[1] The case comes to us on the respondent-employer's appeal from a decree of the full commission affirming a decree of the trial commissioner ordering total disability payments for the future as well as for a past period during which the only payments made were for partial disability.

While the travel of the case is somewhat tortuous, it bears repetition as a means of furnishing a context for a proper consideration of the issues. On April 28, 1964 petitioner sustained an injury and soon thereafter filed an original petition seeking compensation benefits with the Workmen's Compensation Commission. A decree[2] of that commission entered on July 16, 1964 determined that the injury was work-related and totally incapacitating, ordered weekly payments for total incapacity, and stipulated that respondent should pay petitioner compensation for partial incapacity if he should thereafter resume gainful

---

[1]To thus recognize and give cognizance to the substance, rather than the form, of a proceeding was approved in *Carpenter* v. *Globe Indemnity Co.*, 65 R. I. 194, 200, 14 A.2d 235, 238 (1940), where, in commenting upon similar action, we said, "[t]his being so, justice will be served and no real violence will be done to the statute if we assume that the instant petition was properly before the superior court for its determination as a petition to that court under art. III, §1 [now G. L. 1956 (1968 Reenactment) §28-35-7] to enforce the agreement."

[2]That decree was incorporated into the record of this appeal by order of this court. *Raymond* v. *B. I. F. Industries, Inc.*, 109 R. I. 954, 288 A.2d 269 (1972).

employment at wages less than his pre-injury average weekly earnings of $117.30.

Although the 1964 decree had apparently been structured to provide for reduced payments if petitioner returned to work, the parties did not rely on that decree when, in December of 1966, petitioner resumed gainful employment. Instead, they entered into an agreement providing for the payment of compensation for partial disability for the duration of petitioner's diminished capacity.

Thereafter petitioner again became totally incapacitated, whereupon the parties executed a supplementary agreement on January 9, 1968 providing for weekly payments of $45 for the duration of the second total incapacity. That incapacity proved to be of short duration, however, and in March of 1968 petitioner resumed gainful employment but at wages less than those earned prior to his injury. The respondent, acting on its own initiative and without asking for or receiving commission sanction, then discontinued the total disability compensation payments it had been making and commenced paying compensation for partial incapacity using as the basis for computing those payments the statements of weekly earnings furnished by petitioner. This practice continued for almost three years and was apparently still being followed when the case was heard by the trial commissioner.

On this record the trial commissioner found that the January 9, 1968 agreement was still outstanding, that respondent should have paid the total compensation due, under that agreement following petitioner's return to work on March 5, 1968, and that respondent was in contempt for having failed to make those payments. In addition he ordered respondent (1) to pay petitioner the difference between the partial compensation received by him since March 5, 1968 and what he would have received had he been paid the total compensation required by the January

9, 1968 supplementary agreement; (2) to continue to pay him compensation for total incapacity until authorized under the Act to do otherwise; and (3) to pay petitioner's counsel a fee of $200. The full commission affirmed and directed the payment of a further counsel fee of $125. The case is now before this court on respondent's appeal.[3]

The respondent lists 22 reasons of appeal which, for purposes of briefing and arguing, it has consolidated into eight contentions. The first concerns the legal effect of that provision in the July 16, 1964 decree which says, in substance, that petitioner, in the event of his resumption of gainful employment, shall be paid compensation for partial rather than total incapacity.[4] The respondent argues that this provision is the law of the case, that it is self-executing, and that it became operative when petitioner returned to work in March, 1968.

---

[3]Following the appeal to this court, we denied the employer's motion to stay the operation of the full commission's decree pending final determination of the appeal, *Raymond* v. *B. I. F. Industries, Inc.,* 109 R. I. 931, 284 A.2d 82 (1971); we denied without prejudice the employee's motion to dismiss the employer's appeal, *Raymond* v. *B. I. F. Industries, Inc.,* 109 R. I. 939, 284 A.2d 471 (1971); and we granted the employer's motion to incorporate as part of the record on this appeal the official file of the Workmen's Compensation Commission relating to the proceeding entitled *Raymond* v. *New York Air Brake Co.,* (the instant respondent's predecessor) W.C.C. No. 64-0676, *Raymond* v. *B. I. F. Industries, Inc.,* 109 R. I. 954, 288 A.2d 269 (1972).

[4]The provision reads in its entirety:

"That when the petitioner resumes gainful employment, if the weekly wages, earnings or salary which the petitioner earns thereafter shall be less than $117.30, the respondent shall thereafter pay to the petitioner compensation for partial incapacity in accordance with the provisions of General Laws 1956, Section 28-33-18, but not more than $22.00 a week; and in such case, it shall be the duty of the petitioner to furnish to the respondent evidence of the amount of wages earned by the petitioner from any employer other than the respondent, in order that the amount of compensation which may be due to the petitioner, if any, may be computed."

Substantially the same argument was rejected by the commission on the ground that the settled law[5] of this state is that an approved agreement between the parties to a compensation proceeding is equivalent to and has the force and effect of a decree or order, that the last unappealed from agreement, decree, or order renders all that has preceded res judicata, and that it establishes the starting point for determining the status of the parties.

While respondent does not quarrel with these legal principles, it nonetheless argues that they are inapposite in the peculiar circumstances of this case, and that *Lawrence v. Aetna Casualty & Surety Co.*, 70 R. I. 186, 38 A.2d 139 (1944), should control. In that case the order which entered following a hearing on an employers' petition for review neither vacated an earlier preliminary agreement providing for the payment of compensation for total disability, nor determined to what extent the employee's disability had diminished. It provided, however, that upon resuming work his compensation should be reduced or suspended depending upon whether his then current earnings proved to be less than, equal to, or in excess of his pre-injury average weekly earnings. When he subsequently returned to work, his compensation payments were adjusted voluntarily by his employers as provided for in the subsequent order. After several months of such employment he was discharged for economic reasons. Thereupon his employers refused to pay any further compensation whatsoever, claiming that the unappealed from order governed and that it did not require compensation payments

---

[5]*Trudeau* v. *U. S. Rubber Co.*, 92 R. I. 328, 331, 168 A.2d 460, 462 (1961); *Olbrys* v. *Chicago Bridge & Iron Co.*, 89 R. I. 187, 190-91, 151 A.2d 684, 686 (1959); *Ottone* v. *Franklin Process Co.*, 76 R. I. 431, 437, 71 A.2d 780, 783 (1950); *Carpenter* v. *Globe Indemnity Co.*, 65 R. I. 194, 202-03, 14 A.2d 235, 239-40 (1940); *Gobeille* v. *Ray's, Inc.*, 65 R. I. 207, 213, 14 A.2d 241, 244 (1940); *Hingeco Mfg. Co.* v. *Haglund*, 65 R. I. 218, 222, 14 A.2d 233, 234-35 (1940).

under the then existing conditions. They persisted in the same position in the ensuing litigation.

When *Lawrence* reached this court the employers' contention received short shrift since in our judgment the later order did not supercede the earlier agreement, but merely provided the parties with a convenient method of making adjustments in the compensation payments when the employee resumed work. Consequently, we held that the order did not replace the agreement, that the two co-existed, that they should be considered together in determining the rights and obligations of the parties, and "* * * that when the peculiar facts and circumstances which gave effect to the order ceased to exist the respondents' [employers'] obligation under the preliminary agreement, which was the fundamental arrangement for compensation between the parties, should continue." *Id.* at 190, 38 A.2d at 140.

Despite factual similarities between this case and *Lawrence,* we need not consider its persuasive force since it has been blunted by P. L. 1954, ch. 3297, sec. 1 [now G. L. 1956 (1968 Reenactment) §28-35-46 through §28-35-53, inclusive]. In portions material that enactment prohibits an employer from discontinuing, suspending or reducing compensation payments without first notifying both the commission and the employee of the contemplated action, and it also provides the employee with a means for disputing the contemplated action.

Those prohibitions are clear and explicit. They permit no construction. They apply here, and respondent's failure to notify petitioner following his return to work of its intention to reduce compensation payments would be fatal to its position even were we prepared under *Lawrence* to hold that the 1964 decree was not superceded by the 1968 supplementary agreement and that the two should be con-

sidered together in determining the rights and obligations of the parties.

The respondent also invokes the doctrine of estoppel or of estoppel *in pais*. To be entitled to claim the protection of the former burdened respondent with establishing some affirmative representation or equivalent conduct of petitioner's which was intended to and did in fact induce it to act or fail to act in reliance thereon to its disadvantage. *Lichtenstein* v. *Parness*, 81 R. I. 135, 138, 99 A.2d 3, 5 (1953).

While in substance no different, respondent's burden with respect to a claim of an estoppel *in pais*, or an estoppel by silence, called for proof that petitioner, though in the circumstances under a duty to speak, refrained from so doing and thereby led it to believe in the existence of a state of facts in reliance upon which it acted to its prejudice. *Hall* v. *New York, New Haven & Hartford R. R.*, 27 R. I. 525, 529, 65 A. 278, 280 (1906).

Here respondent attempts to bring this case under the estoppel umbrella by asserting that petitioner's failure to protest the reduced compensation which was paid to him following his return to work in March, 1968 induced its insurer to refrain from taking appropriate action under the Act to seek a modification of its obligation to pay total disability compensation upon the ground that petitioner's incapacity had diminished. In these circumstances, the argument continues, fair dealing and a sense of equity call for petitioner to be estopped from claiming that the compensation payments he received subsequent to resuming work were insufficient. In short, respondent argues that petitioner, having remained silent when it was his duty to speak, ought not to be allowed to speak at a time when fair play requires him to remain silent.

The respondent's position is premised upon the assumption that petitioner so acted as to induce it to refrain from

taking appropriate action under the Act to reduce its liability and that it relied upon that conduct to its detriment. The record, however, fails to support that hypothesis. Instead it indisputably discloses that petitioner, rather than misleading respondent by accepting without protest what he received after returning to work, complained to respondent's personnel manager that he was then receiving less than what he had earned prior to his injury. It further discloses that respondent, rather than being misled to its prejudice by petitioner's conduct, responded to the latter's complaint by instructing him in what procedures to follow in order to obtain both wages and a compensation payment equal to sixty per cent of the difference between his pre- and post-injury average weekly earnings.

What transpired evidences that respondent's failure to seek relief from its obligations under the January 9, 1968 agreement to pay total disability compensation was self-induced rather than attributable to petitioner's conduct. It was undoubtedly upon these happenings that the commission relied when it found that respondent had not sustained its burden of proving the indispensible elements of an estoppel or of an estoppel *in pais*. Since respondent makes no claim of fraud, that finding, even though negative, is conclusive. *Martines* v. *Terminal Methods, Inc.*, 101 R. I. 599, 601-02, 225 A.2d 790, 792 (1967).

The respondent also argues that petitioner's failure to assert his claim for almost three years so worked to its extreme disadvantage as to constitute laches. The short answer to that contention is found in *Plouffe* v. *Taft-Peirce Mfg. Co.*, 91 R. I. 221, 162 A.2d 557 (1960), where, responding to a similar contention made in comparable circumstances, we said:

> "However, we do not think that this principle allows an employer to shift to an employee the obligation of seeking a ruling of the commission on the validity of the employer's unilateral determination

on the extent of its obligation. Any hardship suffered in such a case is clearly self-imposed and could readily have been obviated by the employer invoking the procedures outlined in G. L. 1956, §28-35-46. A contrary holding would visit an additional procedural burden upon the employee which was not contemplated by the framers of the act and would be inconsistent with the simplicity of the remedy it was designed to achieve." *Id.* at 227, 162 A.2d at 560. What we said in *Plouffe* is dispositive here.

The respondent's other contentions are either so lacking in merit as to require no discussion or so closely related and intertwined with other arguments already considered as to require no further observations.

The respondent-employer's appeal from the decree ordering it to pay past and future compensation for total disability is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the Workmen's Compensation Commission for further proceedings.

*Abedon, Michaelson, Stanzler & Biener, Richard A. Skolnik,* for petitioner.

*Hanson, Curran, Bowen & Parks, E. Howland Bowen,* for respondent.